UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD LAFLAM,

                                    Plaintiff,

        v.

AMERICAN SUGAR REFINING, INC., *and*
DOMINO SUGAR,

                                    Defendants.

No. 21-CV-6710 (KMK)

OPINION & ORDER

Appearances:

Thomas P. Cleere, Esq.
Cellino Law
Melville, NY
*Counsel for Plaintiff*

Jorkeell Echeverria, Esq.
Lauren Fenton-Valdivia, Esq.
Michael T. Hensley, Esq.
Carlton Fields, P.A.
Florham Park, NJ; Tampa, FL; and New York, NY
*Counsel for Defendant American Sugar Refining, Inc.*

KENNETH M. KARAS, District Judge:

        Plaintiff Edward LaFlam ("Plaintiff") brings this Action against American Sugar

Refining, Inc. ("Defendant") and Domino Sugar for negligence in connection with a slip-and-fall

incident at Defendant's sugar refinery in Yonkers, NY.  (*See generally* Compl. (Dkt. No. 1-1).)[1]

Domino Sugar has not appeared, or otherwise responded to Plaintiff's Complaint.  (*See generally*

---

[1] Unless noted or context dictates otherwise, the Court cites to the ECF-stamped page
number in the upper righthand corner of each page.

Dkt.)[2]  Before the Court is Defendant's Motion for Summary Judgment (the "Motion").  (*See*

Not. of Mot. (Dkt. No. 35).)  For the following reasons, Defendant's Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule

56.1, (*see* Def's Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 36-1); Pl's Rule 56.1 Statement

("Pl's 56.1") (Dkt. No. 39); Def's Resp. to Pl's Add'l Mat. Facts ("Resp. to Add'l Mat. Facts")

(Dkt. No. 40-1)), and the admissible evidence submitted by the Parties.[3]  The Court recounts the

_____

[2] Defendant asserts that Plaintiff "improperly pled Domino Sugar as a separate entity" and that Domino Sugar is a "trade name," rather than a distinct, suable corporate entity.  (Def's Reply Mem. of Law in Further Supp. of Mot. ("Def's Reply") 5 n.1 (Dkt. No. 40).)  It does not appear that Plaintiff has responded to this assertion, which was first raised when Defendant filed its Answer in August of 2021.  (*See generally* Dkt.; *see also* Answer ¶¶ 12–21, 31–39 (Dkt. No. 6).)

[3] At the outset, the Court will briefly address several disappointing deficiencies in the Parties' 56.1 Statements.  Defendant's 56.1 Statement, for example, improperly cites to Plaintiff's Complaint and its Answer in certain paragraphs, rather than to admissible evidence. (*See, e.g.*, Def's 56.1 ¶¶ 3, 10.)  Local Civil Rule 56.1(d) provides that, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." "It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment."  *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023); *see also Bentivegna v. People's United Bank*, No. 14-CV-599, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017) ("[A]n unverified complaint is not admissible evidence."); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (finding that on a motion for summary judgment "allegations in an unverified complaint cannot be considered as evidence." (citation omitted)).  The Court is therefore free to disregard these unsupported assertions.

Moreover, Defendant's 56.1 Statement contains several placeholders, where counsel apparently meant to include citations to the record.  (*See* Def's 56.1 ¶¶ 9 (citing "*Id.* at ___" (italics added)), 18–20 (stating "CITE" instead of including citations to the record).)  To start, this oversight suggests that counsel for Defendant failed to exercise the appropriate degree of care when preparing their summary judgment submission.  And although Defendant's attorneys have had ample opportunity to provide the Court the missing citations—and presumably have been on notice of this particular deficiency since they received Plaintiff's Opposition—they have failed to do so.  To make matters worse, counsel for Plaintiff responded to Defendant's

facts "in the light most favorable to" Plaintiff, the non-movant, and draws all reasonable inferences in his favor. *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021) (citing *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam)).  The material facts described below are in dispute only to the extent indicated.

Defendant operates a sugar refining facility in Yonkers, NY.  (*See* Aff. of Michael T. Hensley, Esq. in Supp. of Mot. ("Hensley Aff.") Ex. C ("Pl's Dep. Tr.") at 23:9–14, 46:18–22 (Dkt. No. 37-3); *id.* Ex. E ("Def's Incident Report") (Dkt. No. 37-5))  During the relevant time period, Plaintiff worked as a truck driver for non-party Sweeteners Plus.  (Def's 56.1 ¶ 5; Pl's 56.1 ¶ 5.).  His job responsibilities included picking up sugar or another sweetener from suppliers, and then delivering the product to one of Sweeteners Plus's customers.  (Def's 56.1 ¶ 6; Pl's 56.1 ¶ 6; *see also* Pl's Dep. Tr. at 16:7–12 ("I take [the sugar or other sweetener] to a customer, whoever [Sweeteners Plus] sold it to.").)  Liquid sugar was among the sugar and sweetener products Plaintiff would pick up.  (*See* Pl's Dep. Tr. 17:20–18:6, 47:4–8 (referencing "liquid product" and "liquid sugar").)  According to Plaintiff, when he picked up liquid sugar from Defendant's sugar refinery in Yonkers, Defendant's employees took care of loading the product into Plaintiff's truck, and during that time his only role was to park his truck in a loading

---

paragraphs with missing citations as follows:  "Unable to admit or deny this alleged material fact because there is no citation or reference to a portion of the record."  (*See* Pl's 56.1 ¶¶ 9, 18–20.)  The Court finds that Plaintiff's objections are improper.  *See Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *2 n.6 (S.D.N.Y. Sept. 29, 2023) (finding improper the plaintiff's objection that he was "unable to admit or deny" a paragraph in the defendants' 56.1 statement and therefore deeming that paragraph admitted); *Litchhult v. USTRIVE2, Inc.*, No. 10-CV-3311, 2013 WL 3491076, at *2 n.1 (E.D.N.Y. July 10, 2013) (deeming statements admitted where the plaintiff stated that she could "neither admit or deny" the defendant's statement).  In light of these dueling deficiencies, the Court has taken upon itself the task of reviewing the record and identifying the material Defendant meant to cite, and therefore "deems as admitted [] those facts in [D]efendant's Rule 56.1 Statement that are supported by admissible evidence and that are not controverted by other admissible evidence in the record."  *Litchhult*, 2013 WL 3491076, at *2 n.1.

3

bay, turn off the truck's engine, and then leave his keys by a nearby office.  (*See* Def's 56.1 ¶ 7–8; Pl's 56.1 ¶ 7–8.)

On September 24, 2020, Plaintiff arrived at Defendant's refinery in Yonkers.  (*See* Hensley Aff. Ex. D ("Visitor Register") (Dkt. No. 37-4); Def's Incident Report.)  Upon arriving, Plaintiff signed a document titled "Visitor/ Vehicle Register" (the "Visitor Register").  (*See* Visitor Register.)  The top of the Visitor Register contained the following text:

> **RELEASE FROM LIABILITY** – In consideration of my being permitted to visit the refinery and other premises/property of American Sugar Refining Inc.[,] Domino Foods, Inc., and their affiliates (the "Released Parties"), I expressly hereby forever release and discharge the Released Parties from all claims, demands, injuries, damages, lawsuits, liabilities, actions, or causes of action, and from all acts of active or passive negligence on the part of the Released Parties, their servants, agents, or employees.

(*Id.*)[4]  The document's title appears—in significantly larger font—just below that text.  (*See id.*) Beneath the title, the document contains ten columns and ten rows for visitors to input sign-in information, such as the date, their name, their time in and out, and so on.  (*See id.*)  The column titled "NAME/ Signature" also states, in approximately the same sized font, "I AGREE TO THE RELEASE PRINTED ABOVE."  (*Id.*; Def's 56.1 ¶ 15; Pl's 56.1 ¶ 15.)  There is no dispute that Plaintiff signed the Visitor Register and that he was aware of the language of the release when he did so.  (Def's 56.1 ¶¶ 13–14; Pl's 56.1 ¶¶ 13–14.)  In fact, Plaintiff was required to sign the Visitor Register before he could enter the Yonkers refinery.  (Pl's 56.1 ¶ 24; Resp. to Add'l Mat. Facts ¶ 24.)[5]

---

[4] Herein, the Court will refer to this language as the "Liability Release."

[5] Although Plaintiff testified that his employer compelled him to sign forms like the Visitor Register, (Pl's Dep. Tr. 58:14-16), the Court notes that Defendant refuses to admit this assertion because Plaintiff "could not articulate any written policy issued by his employer saying that he had to sign any liability releases at any facilities," (Resp. to Add'l Mat. Facts ¶ 25.)

4

After signing the Visitor Register to enter the refinery, Plaintiff parked his truck, turned off the engine, and ascended a stairway to place his keys in a basket.  (*See* Pl's Dep. Tr. 68:8–69:3, 69:15–70:7.)  Plaintiff then returned the way he came when he "tripped and tumbled" down the stairs.  (Def's Incident Report; *see also* Def's 56.1 ¶ 21; Pl's 56.1 ¶ 21; Pl's Dep. Tr. 70:22–71:25.)  As a result of his fall, Plaintiff injured his right leg.  (*See* Def's Incident Report; Pl's Dep. Tr. 25:25–26:3.)

### B.  Procedural History

Plaintiff filed suit against Defendant in state court on July 7, 2021.  (*See* Compl.)  Defendant removed the case to federal court on August 9, 2021, (*see* Not. of Removal (Dkt. No. 1), and filed its Answer on August 16, 2021, (*see* Answer).[6]

Following discovery, Defendant filed a pre-motion letter seeking leave to file its Motion.  (*See* Letter from Jorkeell Echeverria, Esq. to Court (Jan. 30, 2023) (Dkt. No. 32).)  Plaintiff did not file a response.  (*See generally* Dkt.)  The Court adopted a briefing schedule for Defendant's Motion following a pre-motion conference on February 16, 2023, (*see* Dkt. (minute entry for Feb. 16, 2023); Scheduling Order (Dkt. No. 34)), and Defendant filed its Motion pursuant to that schedule on March 2, 2023, (*see* Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 36); Def's 56.1; Hensley Aff. (Dkt. No. 37)).  On March 30, 2023, Plaintiff filed his Opposition to Defendant's Motion.  (*See* Pl's Mem. in Opp'n to Mot. ("Pl's Opp'n") (Dkt. No. 38); Pl's 56.1.)  Defendant filed its Reply on April 17, 2023.  (Def's Reply; Resp. to Add'l Mat. Facts.)[7]

---

[6] It is undisputed that the Court has subject matter jurisdiction over this diversity case. *See* 28 U.S.C. § 1332(a).

[7] The Court notes that Defendant's Reply was due on April 16, 2023, (*see* Scheduling Order), and that it did not request any extensions, (*see generally* Dkt.).

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at *4 (S.D.N.Y. Nov. 9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10, 2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp.,*

*Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'"

*Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P.56(c)(4))); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal citation omitted)).

### B.  Analysis

In support of its Motion, Defendant argues that Plaintiff's claim is foreclosed, given that he executed the Liability Release when he signed the Visitor Register.  (Def's Mem. 7–10; *see also id.* at 5 ("[T]here is no genuine issue of material [fact] that Plaintiff released [Defendant]

from liability and this [A]ction should be dismissed in its entirety.").)  In his Opposition, Plaintiff

contends that the Court should decline to enforce the Liability Release because it is:

(1) unconscionable under New York law, (*see* Pl's Opp'n 3–5); (2) an unenforceable contract of

adhesion, (*see id.* at 5); and (3) void as against public policy, (*see id.* at 6–8).[8]

### 1. Legal Background

"Under New York law, general releases are governed by principles of contract law."

*Fernandez v. City of New York*, No. 19-CV-4021, 2020 WL 4605238, at *4 (S.D.N.Y. Aug. 11,

2020) (citing *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997)); *accord*

*Sjogren v. Bd. of Trs. of Dutchess Cmty. Coll.*, 189 N.Y.S.3d 237, 239 (App. Div. 2023) ("A

release is a contract, and its construction is governed by contract law." (citation omitted));

*Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (applying New York law

and explaining that "[a] release is a type of contract . . . governed by contract law").[9]  As the

New York Court of Appeals has explained, "[i]n the absence of a contravening public policy,

exculpatory provisions in a contract, purporting to insulate one of the parties from liability

resulting from that party's own negligence . . . generally are enforced, subject however to various

---

[8] Given that Plaintiff's contract-of-adhesion argument relies exclusively on the ground
that "a showing of unconscionability can support a finding of adhesion," that argument is
subsumed into his separate unconscionability argument.  (*See* Pl's Opp'n 5.)

[9] The Parties have not explicitly addressed which state's law governs the Liability
Release, but have briefed this case on the apparent assumption that New York law applies.  (*See,
e.g.*, Def's Mem. 7; Pl's Opp'n 6.)  This is sufficient for the Court to apply New York law in this
case.  *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir.2004) ("Here, the parties'
briefs assume that New York law controls this issue, and such implied consent is sufficient to
establish choice of law." (alteration adopted) (quotation marks omitted)); *Tesla Wall Sys., LLC v.
Related Cos., L.P.*, No. 17-CV-5966, 2018 WL 4360777, at *2 (S.D.N.Y. Aug. 15, 2018) (same);
*see also Prince of Peace Enters. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397
(S.D.N.Y. 2011) ("[T]he parties have consented to application of New York law by briefing all
issues under the law of [N]ew York."); *accord Fox v. Int'l Conf. of Funeral Serv. Examining
Bds.*, 242 F. Supp. 3d 272, 289 (S.D.N.Y. 2017).

qualifications." *Lago v. Krollage*, 575 N.E.2d 107, 110 (N.Y. 1991); *accord Sjogren*, 189

N.Y.S.3d at 228–39; *Scrivener v. Sky's the Limit, Inc.*, 68 F. Supp. 2d 277, 280 (S.D.N.Y. 1999).

More specifically, "[w]here the language of an exculpatory agreement expresses in unequivocal

terms the intention of the parties to relieve a defendant of liability for its own negligence, the

agreement will be enforced." *Sjogren*, 189 N.Y.S.3d at 239 (quoting *Skywest, Inc. v. Ground

Handling, Inc.*, 55 N.Y.S.3d 262 (App. Div. 2017)); *accord Lago*, 575 N.E.2d at 110.

Nevertheless, "contractual clauses exculpating a party from its own negligence . . . are

subject to 'close judicial scrutiny,' and will not be enforced 'unless the intention of the parties is

expressed in unmistakable language,' i.e., with reference to 'negligence' or 'words conveying a

similar import.'" *Hoffmann v. Major Model Mgmt., Inc.*, No. 20-CV-6941, 2022 WL 992795, at

*2 (S.D.N.Y. Mar. 31, 2022) (emphasis omitted) (quoting *Gross v. Sweet*, 400 N.E.2d 306, 308–

10 (N.Y. 1979)); *see also Kalinkina v. Martino Cartier Enters., LLC*, No. 16-CV-8331, 2017 WL

2670751, at *3 (S.D.N.Y. June 20, 2017) ("Exculpatory agreements are subject to close judicial

scrutiny and a general rule of strict construction."); *Ash v. N.Y. Univ. Dental Ctr.*, 564 N.Y.S.2d

308, 310 (App. Div. 1990) ("Because exculpation provisions are not favored by the law, they are

strictly construed against the party relying on them and must be unambiguously expressed in

unmistakable language that is clear and explicit in communicating the intention to absolve from

negligence the party seeking to be insulated from liability."). Indeed, the Court of Appeals has

emphasized that "the law frowns upon contracts intended to exculpate a party from the

consequences of his own negligence." *Gross*, 400 N.E.2d at 308; *see also Fawn Second Ave.

LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 637 n.10 (S.D.N.Y. 2022) (same);

*Kalinkina*, 2017 WL 2670751, at *3 (same). An exculpatory agreement "will be viewed as

wholly void, [therefore], where it purports to grant exemption from liability for willful or grossly

negligent acts or where a special relationship exists between the parties such that an overriding public interest demands that such a contract provision be rendered ineffectual." *Lago*, 575 N.E.2d at 110 (citing *Gross*, 400 N.E.2d at 308); *accord Princetel, LLC v. Buckley*, 944 N.Y.S.2d 191, 193 (App. Div. 2012).

"The party 'seeking to set aside a release bears the burden' of showing that the release is unenforceable." *Hastad v. Hippos In Tanks, LLC*, No. 17-CV-2518, 2019 WL 1228076, at *6 (S.D.N.Y. Mar. 15, 2019) (quoting *Hummel*, 575 F. Supp. 2d at 570); *see also Sjogren*, 189 N.Y.S.3d at 239 ("Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to void the release." (alterations adopted) (quotation marks omitted) (quoting *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011))).

### 2.  Application

Notably, Plaintiff does not expressly argue that the Liability Release is unclear or ambiguous, or that, in signing the Visitor Register, he was unwittingly signing the Liability Release as well.  (*See generally* Pl's Opp'n; *see also* Pl's 56.1 ¶ 17 (neither admitting nor denying that Plaintiff "knowingly signed the [L]iability [R]elease").)[10]  Further, he does not

---

[10] Even if Plaintiff had asserted that the Liability Release—which purports to release Defendant "forever . . . from all claims, demands, injuries, damages, lawsuits, liabilities, actions, or causes of action, and from all acts of active or passive negligence," (Liability Release)—was impermissibly unclear and ambiguous, the Court highlights that other courts have routinely concluded that such provisions are enforceable under New York law, *see, e.g.*, *Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d 306, 321 (S.D.N.Y. 2004) (explaining that the use of "the actual word 'negligence'" in a liability release "is certainly significant" in connection with its enforceability and collecting cases using language similar to the Liability Release at issue here that were found to be enforceable); *Scrivener*, 68 F. Supp. 2d at 281 (concluding that the following release language was enforceable:  "Participant expressly assumes all risk of injury and releases the Released Parties from any and all liabilities . . . caused by the **PASSIVE OR ACTIVE NEGLIGENCE** of the Released Parties." (emphasis in original)).

dispute that he signed the Visitor Register containing the Liability Release.  (Def's 56.1 ¶¶ 13–14; Pl's 56.1 ¶¶ 13–14.)  Thus, because the record establishes that Plaintiff signed the Liability Release, he now bears the burden of showing that "there has been fraud, duress or some other fact which will be sufficient to void the release."  *Sjogren*, 189 N.Y.S.3d at 239 (quoting *Centro Empresarial*, 952 N.E.2d at 1000).

The Court turns first to Plaintiff's argument that it should find the Liability Release to be void as against public policy.  (*See* Pl's Opp'n 6–8.)  Plaintiff does not point to any specific public policy that the Liability Release violates, so much as he relies upon Judge Siebel's oral decision in *DeMunn v. American Sugar Refining, Inc.*  (*See id.*; *see also* Oral Decision ("*DeMunn* Decision") (Dkt. No. 24, 17-CV-9786 Dkt.).)[11]  Because the Court agrees with Judge Siebel's cogent analysis in *DeMunn*, a brief overview of that decision is instructive.

Like Plaintiff here, the plaintiff in *DeMunn* was a truck driver for Sweeteners Plus who sued Defendant after he was injured at its Yonkers refinery.  (*Id.* at 3:6–17, 4:15–5:18.)  Upon entering the refinery, the plaintiff signed Defendant's Visitor Register bearing the same Liability Release at issue here, which Defendant sought to use to foreclose the plaintiff's claim.  (*See id.* at 5:23–7:8.)  As relevant here, Judge Siebel concluded that the Liability Release was void as against public policy.  (*See id.* at 14:1–19:22.)[12]  In particular, she explained that "[b]ecause [the]

---

[11] Although Defendant—to its credit—attached a copy of the *DeMunn* Decision to the Hensley Affirmation, (*see* Hensley Aff. Ex. F (Dkt. No. 37-6)), the Court will cite to the publicly available transcript on the *DeMunn* docket.

[12] Based on the arguments before her, Judge Siebel separately determined that the Liability Release was unenforceable on the grounds that the Release language was in relatively small font on the top of the Visitor Register, "the vast majority [of which] served as a vehicle sign-in sheet," and that the plaintiff did not have sufficient time to review the Release language given that one of Defendant's security guards "completed all [of the Visitor Register's] columns except for the signature column" for the plaintiff.  (*See DeMunn* Decision 11:13–13:25.)

plaintiff and [the] defendant had a special relationship similar to that of [an] employer/employee and New York has a clear public interest in ensuring safeguards in the workplace, as outlined in its labor statutes and its Court of Appeals decisions, I find . . . that the release is void as against public policy." (*Id.* 19:17–22.)

As noted above, exculpatory agreements—even those couched in "unequivocal terms"—"will be viewed as wholly void . . . where a special relationship exists between the parties such that an overriding public interest demands that such a contract provision be rendered ineffectual." *Lago*, 575 N.E.2d at 110 (citing *Gross*, 400 N.E.2d at 308); *see also Princetel, LLC*, 944 N.Y.S.2d at 193 (same); *Scrivener*, 68 F. Supp. 2d at 280 (same). Examples of situations where New York courts have found such "special relationships" and invalidated exculpatory provisions on public-policy grounds include agreements between "a passenger and a common carrier," and "a customer and a public utility under a duty to furnish telephone service." *Gross*, 400 N.E.2d at 309. Additionally, the Court of Appeals has upheld the conclusion that a liability release was void as against public policy where an employer required an employee to sign the release as a condition of employment. *See Johnston v. Fargo*, 77 N.E. 388, 389–91 (N.Y. 1906). In doing so, the *Johnston* court explained that:

> The state is interested in the conservation of the lives and of the healthful vigor of its citizens, and if employers could contract away their [common-law duty of care to their employees], it would tend to encourage on their part laxity of conduct in, if not an indifference to, the maintenance of proper and reasonable safeguards to human life and limb.

*Id.* at 390; *see also Kearns v. City of Buffalo*, 111 N.Y.S.2d 778, 781–83 (Sup. Ct. Erie Cnty. 1952) (relying on *Johnston* and concluding that a release was void as against public policy where the plaintiff had signed the release at issue prior to taking a fitness exam required to become a firefighter during which he was injured, because the parties' "relations were quite similar to those of employer and employee").

13

"New York's 'public policy' has long been defined as 'the law of the state, whether

found in the Constitution, the statutes[,] or judicial records.'" *Dickerson v. Thompson*, 897

N.Y.S.2d 298, 300 (App. Div. 2010) (alteration adopted) (quoting *Mertz v. Mertz*, 3 N.E.2d 597,

599 (N.Y. 1936)); *accord Lewis v. N.Y. State Dep't of Civ. Serv.*, 872 N.Y.S.2d 578, 584 (App.

Div. 2009) (same); *see also Lubov v. Horing & Welikson, P.C.*, 898 N.Y.S.2d 244, 245 (App.

Div. 2010) ("Public policy 'is to be ascertained by reference to the laws and legal precedents[,]

and not from general considerations of supposed public interests.'" (quoting *Kraut v. Morgan &

Brother Manhattan Storage Co.*, 343 N.E.2d 744, 748 (N.Y. 1976))).

The Court finds the Court of Appeal's public policy analysis in *Johnston* to be fully

applicable to the Liability Release that Plaintiff signed here.  In other words, "[i]f the release is

enforced, [D]efendant will have at least a greatly reduced incentive to maintain its premise[s] in

safe condition[] for workers who come onto its property in the course of their employment[, like

Plaintiff,] and the health of citizens of the state [may] suffer [as a result]."  (*See DeMunn*

Decision 18:6–11.)  Additionally, the Court notes that New York's state legislature has enacted

the following provision as part of the state's Labor Law:  "All places to which this chapter [i.e.,

New York Labor Law] applies shall be so constructed, equipped, arranged, operated and

conducted as to provide reasonable and adequate protection to the lives, health[,] and safety of

all persons employed therein *or lawfully frequenting such places*."  N.Y. Lab. Law § 200(1)

(emphasis added); *see also id.* § 1 (defining "[t]his chapter" as "the 'Labor Law'").  It is clear

that Plaintiff was, in essence, a business visitor or invitee at the Yonkers refinery.  *See Business

Visitor*, Black's Law Dictionary (11th ed. 2019) (defining "business visitor" as "[s]omeone who

is invited or permitted to enter or remain on another's land for a purpose directly or indirectly

connected with the landowner's or possessor's business dealings"); *see also Invitee*, Black's Law

14

Dictionary ("Someone who has an express or implied invitation to enter or use another's premises, *such as a business visitor* or a member of the public to whom the premises are held open." (11th ed. 2019) (emphasis added)).  Thus, there can be no doubt that Plaintiff was "lawfully frequenting" the refinery, such that he is among the "persons" New York's Labor Law is meant to protect.  N.Y. Lab. Law § 200(1).  (*See also* Pl's Dep. Tr. 46:8–22 (Plaintiff's testimony that he went to Defendant's Yonkers refinery "weekly, sometimes two times a week" as a Sweeteners Plus truck driver).)  Accordingly, in light of New York's state public policy as expressed in the state's Labor Law, as well as in the Court of Appeals' decision in *Johnston*, the Court concludes that the Liability Release is void as against New York's public policy and enforceable as against Plaintiff.  *Cf. Johnston*, 77 N.E. at 389–91; *Kearns*, 111 N.Y.S.2d at 781–83.

Defendant's reliance on the Maryland Court of Special Appeals' 2007 decision in *Hald v. American Sugar Refining, Inc.*—which it attached as an exhibit to the Hensley Affirmation, (*see* Hensley Aff. Ex. G ("*Hald* Decision") (Dkt. No. 37-7))—is unavailing, (Def's Mem. 12).  To be sure, that court affirmed a lower court's grant of Defendant's motion for summary judgment in a negligence case where the plaintiff had signed a prior iteration of Defendant's Liability Release on a visitor register at a refinery in Maryland, which had strikingly similar language to the Liability Release at issue here.  (*See Hald* Decision 3–4, 10–11.)  However, that decision is *unreported* and relied on *Maryland* law, so it is far from controlling and of extremely limited (if any) persuasive value.  (*See Hald* Decision 2 (stating in bold font and all capital letters that the decision is "**UNREPORTED**" (emphasis in original), 7–10 (exclusively citing Maryland state

court cases).)[13]  And, moreover, *Hald* is distinguishable because that court expressly declined to analyze whether "a public policy exception could affect the enforceability of the release" at issue, because the plaintiff had stated that "the court need not wade out into the uncharted waters of a public policy exception."  (*Id.* at 8 n.1.)[14]

Additionally, the numerous cases upon which Defendant relies that apply New York law and enforce exculpatory provisions ultimately are unhelpful to Defendant because the factual circumstances therein are completely different from those present here.  In particular, the majority of these cases concern releases relating to voluntary, recreational activities, rather than

_____

[13] In fact, the Court notes that Maryland's Court Rules make clear that "[a]n unreported opinion of . . . the Appellate Court," such as the *Hald* Decision, "*is not precedent* within the rule of stare decisis."  Md. Rule § 1-104(a)(1) (emphasis added).  Moreover, those Rules state that, in general, "[a]n unreported opinion of . . . the Appellate Court *may not be cited* as precedent within the rule of stare decisis or, [except under very limited circumstances], *as persuasive authority*."  *Id.* § 1-104(a)(2)(A) (emphasis added).  To the extent Maryland's Court Rules permit the citation of unreported opinions as persuasive authority, such opinions must be "issued on or after July 1, 2023," there must be "no reported authority adequately address[ing the] issue before the court," and the citation itself must "clearly identify the opinion as unreported and include the case number, term, and date the opinion was filed."  *Id.* § 1-104(a)(2)(B).  Here, the *Hald* Decision was issued in *2007* and, the Court notes, Defendant not only failed to "identify the opinion as unreported and include the case number, term, and date the opinion was filed" in its brief, (*see* Def's Mem. 12), but also failed to do so (or to even reference *Hald* at all) in the Hensley Affirmation, to which the *Hald* Decision is purportedly attached, (*see generally* Hensley Aff.).  Thus, it is clear to the Court that Defendant had no business citing *Hald* as persuasive authority.

Given that it has previously relied upon the *Hald*, (*see DeMunn* Decision 18:13–19:9 (discussing Defendant's reliance on *Hald* in that case)), the Court admonishes Defendant to refrain from continuing to rely on *Hald* in contravention of Maryland's Court Rules.

[14] The Court is also unconvinced by the *Hald* court's conclusion—parroted by Defendant here, (*see, e.g.*, Def's Reply 7–9)—that the plaintiff "could have chosen not to enter the premises at all" if he did not want to sign the release, (*Hald* Decision 10).  Even if Plaintiff has failed to point to record evidence demonstrating that his "failure to sign [the Liability Release would be] a terminable offense," (Def's Reply 8), Defendant cannot seriously suggest that Plaintiff could simply refuse to sign the Liability Release required to enter Defendant's refinery when *it was his job* to pick up sugar or another sweetener from facilities like the one belonging to Defendant on behalf of Sweeteners Plus, (*see* Def's 56.1 ¶ 6; Pl's 56.1 ¶ 6; *see also* Pl's Dep. Tr. 58:4–10 (Plaintiff's testimony that he "believe[s]" registers containing liability releases are relatively common among sugar and sweetener suppliers)).

activities integral to the plaintiffs' employment, as was the case here. *See Hsu v. Krav Maga NYC, LLC*, 29 N.Y.S.3d 307, 308–09 (App. Div. 2016) (affirming a lower court's decision granting summary judgment in favor of the defendant where the plaintiff signed a liability release "as a condition of participating in [the] defendant's self-defense training class"); *Schwartz v. Martin*, 919 N.Y.S.2d 217, 218–19 (App. Div. 2011) (reversing a lower court's decision denying the defendants' motions for summary judgment where the plaintiff had signed a release in connection with an application for a bicycle racing license, and had brought suit after being injured while "acting as a marshal" at a bicycle race, "which was a required condition to participating" in bicycle races pursuant to that license); *Thiele v. Oakland Valley, Inc.*, 898 N.Y.S.2d 481 (Mem) (App. Div. 2010) (affirming the lower court's decision granting the defendant's motion for summary judgment where the plaintiff had signed a release "before participating in a go-cart driving class the defendant offered at its facility"); *Scrivener*, 68 F. Supp. 2d at 279–81 (finding a release to be enforceable where the plaintiff had signed a release before taking skydiving lessons); *Lux v. Cox*, 32 F. Supp. 2d 92, 98–100 (W.D.N.Y. 1998) (adopting a report and recommendation, which concluded that a release signed before the parties participated in a driver's school at a race track was enforceable); *Watts v. Country Cycle Club*, 655 N.Y.S.2d 422 (Mem) (App. Div. 1997) (affirming the lower court's decision granting the defendant's motion for summary judgment where the plaintiff had signed a release before participating in a bicycle trip sponsored by the defendant).

Finally, Defendant argues that any determination that Plaintiff had a "special *relationship*" with it such that enforcing the Liability Release violates New York's public policy somehow equates to a finding that he was its "special *employee*" for Workers' Compensation purposes. (Def's Mem. 13–16; Def's Reply 11–13.) As a result, Defendant contends, Plaintiff's

claim is barred under Workers' Compensation exclusivity, given that Plaintiff received Workers' Compensation benefits from Sweeteners Plus.  (*See* Def's Reply 12–13.)  However, this argument completely misses the point.  Indeed, Defendant appears to be putting far too much stock in the Court of Appeals' use of the word "special" in *Lago*.  575 N.E.2d at 110.  Simply put, Plaintiff is not arguing that he is special employee of Defendant, nor is the Court making such a finding.  *See Carey v. Toy Indus. Ass'n TM, Inc.*, 189 N.Y.S.3d 96, 99 (App. Div. 2023) (explaining that "a worker may be deemed a special employee where he or she is transferred for a limited time of whatever duration to the service of another" (quotation marks omitted)).  Instead, the Court holds that the relationship between Plaintiff and Defendant—under the unique circumstances of this particular case—render the application of the Liability Release impermissible under New York public policy.  Accordingly, Defendant's assertion that the Court's holding herein necessarily means that Plaintiff's claim against it is barred under Workers' Compensation Law has no force.[15]

---

[15] Having determined that the Liability Release is void as against New York public policy and therefore unenforceable, the Court need not reach Plaintiff's alternative and overlapping arguments that it is unenforceable both under the doctrine of unconscionability and as an unconscionable contract of adhesion.  (Pl's Opp'n 3–5.)

III.  Conclusion

For the reasons stated above, Defendant's Motion is denied.  The Court will hold a status conference in this case on January 24, 2024 at 11:00 a.m.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 35.)

SO ORDERED.

Dated:    January 12, 2024
          White Plains, New York

                                          _____
                                          KENNETH M. KARAS
                                          United States District Judge